IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Illinois Tool Works Inc. and )
Miller Electric Mfg. Co., )
)
      *Plaintiffs,* ) Case No. 03-C-966
)
vs. ) Judge William Griesbach
)
Thermal Dynamics Corporation )
)
      *Defendants.* )
)
)
)
_____ )

**ILLINOIS TOOL WORKS INC. AND MILLER ELECTRIC MFG. CO.'S
MEMORANDUM IN SUPPORT OF THEIR RULE 56 MOTION FOR PARTIAL
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND .........................................................................................................3

    A.    Thermal Dynamics Has No Non-Infringement Contentions for the Claims at Issue in this Motion. ....................................................................................3

    B.    Thermal Dynamics Was Unable to "Manufacture" Non-Infringement Contentions Despite a Court Order. .....................................................................4

III. ARGUMENT ..............................................................................................................5

    A.    Federal Circuit Precedent Demonstrates that Summary Judgment of Infringement is Proper Under the Present Facts. ..............................................5

    B.    Thermal Dynamics is Wrong as a Matter of Law that Invalidity is a Non-Infringement Defense. ........................................................................................6

    C.    Thermal Dynamics Has No Non-Infringement Positions for the Claims at Issue in this Motion. ....................................................................................8

        1.    Thermal Dynamics Has All the Intrinsic Evidence. ..................................9

        2.    Thermal Dynamics Has All Evidence Concerning the Operation, Components, and Function of the CutMaster™ 38. ....................................9

        3.    Thermal Dynamics Has Provided Non-Infringement Arguments Where it Believes They Exist. ....................................................................10

        4.    Thermal Dynamics Has Repeatedly Admitted That No Other Non-Infringement Arguments Exist. ....................................................................10

    D.    The Uncontested Evidence Presented Here is Sufficient that no Reasonable Jury Could Find that the Thermal Dynamics' CutMaster™ 38 Does Not Infringe the Claims at Issue in this Motion. ...........................................11

IV. CONCLUSION ........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 6

*Ardisam, Inc. v. Ameristep, Inc.*,
    302 F. Supp. 2d 991 (W.D. Wis. 2004) ................................................................... 10

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) ................................................................................. 6

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
    49 F.3d 1575 (Fed. Cir. 1995) ................................................................................ 6, 7

*Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*,
    288 F.Supp.2d 562 (S.D. N.Y. 2003) ....................................................................... 11

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83 (1993) ..................................................................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................... 5, 6

*Ferguson Beuregard v. Mega Sys.*,
    350 F.3d 1327 (Fed. Cir. 2003) ................................................................................. 9

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
    50 F. Supp. 2d 863 (W.D. Wis. 1998) ..................................................................... 10

*Macrovision Corp. v. Dwight Cavendish Dev., Ltd.*,
    105 F.Supp.2d 1070 (N.D. Cal. 2000) ..................................................................... 12

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ................................................................................. 7

*Moen Inc. v. Foremost Int'l Trading, Inc.*,
    38 F. Supp. 2d 680 (N.D. Ill. 1999) .......................................................................... 6

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
    320 F.3d 1354 (Fed. Cir. 2003) ................................................................................. 7

*Seal-Flex, Inc. v. Athletic Track and Court Construction*,
    172 F.3d 836 (Fed. Cir. 1999) .............................................................................. 7, 11

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002) ........................................................................... 6, 7, 8

Case 1:03-cv-00966-WCG    Filed 09/07/04    Page 3 of 17    Document 63

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
 308 F.3d 1193 (Fed. Cir. 2002) ......................................................................................... 9

*The Braun Corp. v. Maxon Lift Corp.*,
 282 F.Supp. 2d 931 (N.D. Ind. 2003 ................................................................................. 2

*Toro Co. v. Deere & Co.*,
 355 F.3d 1313 (Fed. Cir. 2004) ................................................................................. 11, 12

*Transclean Corp. v. Bridgewood Services, Inc.*,
 290 F.3d 1364 (Fed. Cir. 2002) ......................................................................................... 7

*United States Surgical Corp. v. Ethicon, Inc.*,
 103 F.3d 1554 (Fed. Cir. 1997) ....................................................................................... 11

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................... 9

*Vivid Techs., Inc., v. American Science & Eng'g., Inc.*,
 200 F.3d 795 (Fed. Cir. 1999) ......................................................................................... 11

**Rules**

Civil Local Rule 7.1 ................................................................................................................... 3

Federal Rule of Civil Procedure 11 .......................................................................................... 3

Federal Rule of Civil Procedure 56(c) ...................................................................................... 5

I.   **INTRODUCTION**

Plaintiffs Illinois Tool Works Inc. ("ITW") and Miller Electric Mfg. Co. ("Miller Electric") (collectively "Plaintiffs") brought suit to stop Defendant Thermal Dynamics Corporation's ("Thermal Dynamics") willful infringement of U.S. Patent Nos. 6,236,014 ("the '014 patent") and 6,239,407 ("the '407 patent"). (*See* Exs. 1 and 2).

The '014 and '407 patents, invented by James Ulrich and James Thommes respectively, represent fundamental advances in the field of welding, plasma cutting, and/or induction heating power sources. The input power level used to operate a welder, plasma cutter, or induction heater may vary from source to source, and prior to the advent of Plaintiffs' technology, operators of such devices needed to manually adjust a device to account for a variety of power input levels. (*See* Ex. 2 at 1:61-2:2). The '407 patent solved many problems in the welding, cutting, and heating industry, not the least of which was meeting a long-felt need for a welding, plasma cutting, or induction heating power source that could automatically accommodate ranges of input power.[1] (*See* Ex. 2 at 3:25-31).

The '014 patent improved upon the power source taught in the '407 patent. One advantage of the '407 patent was that it made it easier to use welders, cutters, or induction heaters in locations that have power constraints due to fuse sizes or generators. (*See* Ex. 2 at 3:11-12). However, in a commercial implementation of the '407 patent, the Spectrum 2050, it was discovered that the device did not perform satisfactorily with a generator. James Ulrich solved this problem, resulting in the Spectrum 2050 becoming a phenomenally successful

---

[1] In the field of the patents-in-suit, a power source is "an apparatus for supplying current and voltage suitable for welding, thermal cutting, or thermal spraying." (*See* Ex. 24, Welding Handbook (9th ed.), at 792.) The Court may have encountered variations in input power when traveling abroad in Europe, as an example.

-1-

Case 1:03-cv-00966-WCG   Filed 09/07/04   Page 5 of 17   Document 63

product for Miller Electric. Mr. Ulrich's improvement along with the pioneering work of Mr. Thommes pushed the Plaintiffs' technology to the level of industry respect it enjoys today.

Plaintiffs achieved that respect by commercializing products employing the '014 and '407 patented technology under the Auto-Line™ trademark (or its predecessor Omni-Line™) that enjoy great success on the market. Many years after Plaintiffs' employees pioneered this technology and Plaintiffs spent time and money making the technology a market benchmark, Thermal Dynamics introduced its infringing product, the CutMaster™ 38.

Six months after Plaintiffs filed suit, this Court ordered Thermal Dynamics to provide non-infringement bases. In response, Thermal Dynamics identified non-infringement contentions for one of the asserted claims of the '014 patent and two of the asserted claims of the '407 patent.[2] For the remainder, Thermal Dynamics simply maintains that "one cannot infringe an invalid claim." The Federal Circuit, however, has squarely rejected invalidity as a defense to infringement. Because Thermal Dynamics, even after a Court Order to do so, has no basis for why it does not infringe certain asserted claims, it plainly infringes those claims and partial summary judgment of infringement is proper. Partial summary judgment of infringement will narrow the issues in this case, leaving only the disputed issues for the rest of this case.

Pursuant to Civil Local Rule 7.1, and Federal Rule 56, Plaintiffs thus move the Court to grant Plaintiffs partial summary judgment of infringement with respect to claims 1, 2, 3, 4, 8, 9,

---

[2] Patent infringement is determined on a claim-by-claim basis. *See The Braun Corp. v. Maxon Lift Corp.*, 282 F.Supp. 2d 931, 933 (N.D. Ind. 2003) ("[Defendant] is liable for patent infringement if a single claim is infringed.") Therefore, Thermal Dynamics' contentions of noninfringement for three of the asserted claims are of no moment to the question of infringement of the other, uncontested, asserted claims. Indeed, as will be discussed, the fact that Thermal Dynamics could set forth noninfringement arguments for some, but not all, claims, demonstrates that there do not exist any noninfringement arguments for the claims at issue in this Motion. Also, Plaintiffs intend to pursue infringement verdicts at a later time for the three claims, not at issue in this motion.

10, 11, 12, 13, 21, 22, 23, and 24 of the '014 patent and claims 1, 4, 5, 7, 9, 16, and 20 of the '407 patent.

## II. BACKGROUND

Thermal Dynamics knew, by at least February 11, 2003, that Plaintiffs alleged infringement of the '014 and '407 patents. (Ex. 3; Fact No. 1). Plaintiffs filed suit against Thermal Dynamics on October 3, 2003 to stop that willful infringement. (*See* Compl.)

### A. Thermal Dynamics Has No Non-Infringement Contentions for the Claims at Issue in this Motion.

Thermal Dynamics affirmatively pled non-infringement as a defense. (*See* Answer, at Affirm. Def. No. 9; Fact No. 2). Assuming that Thermal Dynamics had satisfied its Federal Rule of Civil Procedure 11 obligation to plead non-infringement, Plaintiffs' Interrogatories requested on March 18, 2004 that Thermal Dynamics identify each claim of the '014 and '407 patents that it contends is not infringed and provide an element-by-element basis for each such non-infringement contention. (Ex. 4 at pp. 3-4; Fact No. 3). In its initial response to Plaintiffs' Interrogatories, Thermal Dynamics offered no non-infringement contentions other than that "[b]ecause one cannot infringe an invalid claim, Thermal Dynamics identifies all Exemplary Claims as not infringed by the [accused] CutMaster™ 38." (Ex. 5 at pp. 2-4; Fact No. 4). Thermal Dynamics, therefore, alleged invalidity as its sole "non-infringement" defense.

In response to Thermal Dynamics' failure to provide a single non-infringement position, Plaintiffs' counsel contacted Thermal Dynamics' counsel to determine whether Thermal Dynamics intended to maintain that invalidity was its sole defense to infringement. (Ex. 6 and 8; Fact No. 5). Plaintiffs have, in fact, explicitly warned Thermal Dynamics' counsel that invalidity was not a non-infringement defense, citing precedent from the Federal Circuit. (Ex. 9 at p. 3; Fact No. 7). Thermal Dynamics' counsel replied by asserting that, as of April 21, 2004, its client

-3-

had not yet "manufacture[d]" non-infringement contentions, and that Thermal Dynamics could not provide Plaintiffs with contentions that did not exist. (Ex. 7 at p. 2; Fact No. 6). Plaintiffs' counsel again wrote Thermal Dynamics' counsel to reiterate that Thermal Dynamics, by virtue of affirmatively pleading non-infringement in its Answer, was required by law to have good-faith factual bases and that such contentions were still inexplicably absent. (Ex. 8; Fact No. 5). Thermal Dynamics refused to provide its contentions.

### B. Thermal Dynamics Was Unable to "Manufacture" Non-Infringement Contentions Despite a Court Order.

Plaintiffs then moved this Court to compel Thermal Dynamics to provide its non-infringement contentions. (Ex. 9; Fact No. 7). In response, Thermal Dynamics stated that it had provided Plaintiffs with all "currently formed contentions." (Ex. 10 at p. 4; Fact No. 9). The Court granted Plaintiffs' motion, specifically ordering Thermal Dynamics to "provide the detailed information requested regarding its non-infringement claims." (Ex. 11; Fact No. 10). On June 14, 2004, Thermal Dynamics supplemented its Interrogatory response, and provided non-infringement contentions for only one of the fourteen asserted claims of the '014 patent and two of the nine asserted claims of the '407 patent. (Ex. 12 at pp. 2-4 and App. A; Fact No. 11).

Given the lack of any non-infringement contentions, Plaintiffs twice wrote to Thermal Dynamics, requesting confirmation that Thermal Dynamics had provided all of its non-infringement contentions. (Exs. 13 and 14; Fact No. 12). With respect to the Court's Order, Thermal Dynamics' counsel responded on July 22, 2004: "We believe it is unambiguous and only pertains to invalidity, unenforceability, and non-infringement." (Ex. 15; Fact No. 13). Despite believing the Court's Order of two months earlier to be unambiguous, Thermal Dynamics' counsel then admitted that, based upon all evidence currently available to Thermal Dynamics including all of Thermal Dynamics' own documents concerning the CutMaster™ 38,

-4-

the patents-in-suit, and their file histories, Thermal Dynamics had nothing whatsoever to add to its infringement contentions. (Ex. 16 at p. 2; Fact No. 14 ("Thermal Dynamics' latest Interrogatory Answers do provide the evidentiary support currently available to Thermal Dynamics concerning invalidity, enforceability, and non-infringement.")

In light of Thermal Dynamics' inability to "manufacture" any non-infringement positions regarding claims 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 21, 23, and 24 of the '014 patent and claims 1, 4, 5, 7, 9, 16, and 20 of the '407 patent after knowing about such claims for 18 months, summary judgment of infringement must be granted.

## III. ARGUMENT

This Court should grant summary judgment to Plaintiffs as to the claims raised in this Motion because:

- Thermal Dynamics' sole "non-infringement" defense is wrong as a matter of law;
- Thermal Dynamics has everything it needs to present legally proper non-infringement defenses (had they existed); and
- Plaintiffs' uncontested proof as to the CutMaster™ 38 leaves no issue of fact on infringement for a jury.

### A. Federal Circuit Precedent Demonstrates that Summary Judgment of Infringement is Proper Under the Present Facts.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment plays an integral role in narrowing the issues at dispute in a case and increasing efficiency by disposing of claims or defenses which lack factual support. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To withstand summary judgment,

the nonmoving party must present evidence of a genuine issue relating to a material fact, not merely a "scintilla of evidence" tending show the existence of some factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). District courts grant summary judgment of infringement to narrow the issues before the court. *See, e.g., Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir. 1988) (affirming the district court's grant of summary judgment holding patents infringed and valid); *Moen Inc. v. Foremost Int'l Trading, Inc.*, 38 F. Supp. 2d 680 (N.D. Ill. 1999) (granting plaintiff's motion for summary judgment with respect to infringement).

    **B.**     **Thermal Dynamics is Wrong as a Matter of Law that Invalidity is a Non-Infringement Defense.**

Despite numerous requests by Plaintiffs seeking non-infringement contentions and a Court Order four months ago, Thermal Dynamics still cannot identify a single claim element that is absent in the accused products for the uncontested claims. Rather, Thermal Dynamics merely contends "one cannot infringe an invalid claim." (Ex. 12 at pp. 2-4; Fact No. 11). The Federal Circuit, however, has squarely rejected invalidity as a defense to infringement as a matter of law. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) (stating that such a defense "lacks merit" and that the Federal Circuit has made "unequivocally clear" that there is no such defense); *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995) (holding that the defense is "not a correct statement of the law governing patent infringement.").[3] *Baxter*, in reversing the lower court and finding that

---

[3] The consistent rejection of invalidity as a defense to infringement stems from the rule that infringement and invalidity are treated as two separate issues. *E.g., Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1364 (Fed. Cir. 2003) In fact, Supreme Court precedent, holding that a judgment declaring a patent invalid occurs independently of a patentee's allegation of infringement, supports this premise. *Id*. at 1364-65 (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)). In addition, the differing standards of proof required for invalidity and infringement suggest that they are not interchangeable and thus must be treated separately. With
(Continued…)

the accused device did infringe the plaintiffs' patent, delineated the independence of the issues by specifically noting that the issue of obviousness in light of the prior art relates to invalidity and not to infringement. *Id.*

The present case is analogous to *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364 (Fed. Cir. 2002). There, the defendant responded to the plaintiffs' allegations of infringement by pleading that the accused device did not infringe the asserted patent. *Id.* at 1369. But when the plaintiffs served interrogatories requesting that defendant enumerate its non-infringement contentions, the defendant merely averred that the asserted patent was invalid. *Id.* at 1369, 1373-74. As here, the plaintiffs then moved to compel non-infringement contentions, a motion granted by the district court. *Id.*

Later, the district court granted the plaintiffs' motion for summary judgment of infringement and, as a discovery sanction for failing to provide non-infringement contentions, precluded the defendant from presenting any evidence contrary to the plaintiffs' *prima facie* showing of infringement. *Id.* at 1369. In affirming the district court's decision, the Federal Circuit directly referenced the defendant's lack of response to the plaintiffs' interrogatories as clearly showing that the plaintiffs' evidence of infringement was incontrovertible, thus justifying summary judgment. *Id.* at 1374. The Federal Circuit also held that the district court acted well

---

respect to infringement, a patentee must prove that the accused device infringes at least one claim of the patent by a preponderance of the evidence. *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). With respect to invalidity, an accused infringer must prove that the patent is invalid by clear and convincing evidence. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004). *Tate Access Floors* recognized the danger in merging the issues of invalidity and infringement by warning that "accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing the prior art' defense to literal infringement under the less stringent preponderance of the evidence standard." *Tate Access Floors*, 279 F.3d at 1367.

within its discretion in precluding a defendant that had flaunted a court order from belatedly offering evidence or argument as to non-infringement.

As in *Transclean Corp.,* Thermal Dynamics does not offer a single non-infringement contention despite affirmatively pleading non-infringement. Merely relying on the alleged invalidity of the asserted patents does not constitute a "non-infringement" position. Even after having a chance to first review Plaintiffs' infringement contentions and then being ordered by this Court to do so, Thermal Dynamics can still not identify a single claim element from the uncontested claims that is not present in the accused product. (Ex. 12 at pp. 2-4 and App. A; Fact No. 11). Because Thermal Dynamics has not provided a single piece of evidence or argument rebutting Plaintiffs' factually supported contention that the CutMaster$^{TM}$ 38 infringes the asserted patents, summary judgment with respect to infringement is both appropriate and efficient.

### C. Thermal Dynamics Has No Non-Infringement Positions for the Claims at Issue in this Motion.

Patent infringement analysis is a two-step analysis: 1) the court construes the scope of the asserted claims of the patent and 2) the court compares the allegedly infringing device to the asserted claims as constructed in the first step to determine whether the accused device contains each claim limitation. *E.g., Tate Access Floors*, 279 F.3d at 1365. The first step, claim construction, is a matter of law. *Id.* Having all the evidence it needs to perform this analysis, Thermal Dynamics has conclusively determined that it has no non-infringement arguments. Indeed, Thermal Dynamics' has shown by making noninfringement arguments for three of the

asserted claims that it has all the information it needs to set forth such contentions when it believes they exist.[4]

### 1. Thermal Dynamics Has All the Intrinsic Evidence.

Claim construction begins with the language of the claims themselves. *See, e.g., Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201 (Fed. Cir. 2002). "In the absence of an express intent to impart a novel meaning to the claim terms, the words take on the full breadth of the ordinary and customary meanings attributed to them by those of ordinary skill in the art." *See Ferguson Beuregard v. Mega Sys.*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). If a plain and ordinary meaning cannot be discerned from the claim language itself, the intrinsic evidence, which includes the specification, and, if introduced as evidence, the prosecution history, is appropriate for a court to consider. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). To assist in locating plain and ordinary meaning, a court may also look to pertinent dictionaries and treatises. *See Ferguson*, 350 F.3d at 1338 (internal citations omitted).

Since at least October 2, 2003, Thermal Dynamics has been in possession of all the intrinsic evidence including the patent prosecution histories. To the extent that Thermal Dynamics needed to look for publicly available dictionaries to understand the plain and ordinary meaning of the claims, it has had since at least February 11, 2003 to do so.

### 2. Thermal Dynamics Has All Evidence Concerning the Operation, Components, and Function of the CutMaster™ 38.

The CutMaster™ 38 is manufactured and sold by Thermal Dynamics and thus further discovery will not teach Thermal Dynamics how its own accused product compares with the

---

[4] Of course, ITW and Miller Electric disagree with Thermal Dynamics' noninfringement arguments that have been set forth for only three of the asserted claims, but those issues are not presented here for summary judgment.

-9-

asserted claims. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 50 F. Supp. 2d 863, 866 (W.D. Wis. 1998) (noting, in granting plaintiff's motion for summary judgment of infringement, that no dispute existed between the parties regarding the operation of the accused product). Even before this lawsuit began, Thermal Dynamics knew how its own product operated, and thus additional discovery from Plaintiffs or Plaintiff's employees will not help Thermal Dynamics understand its own product any better. *See Ardisam, Inc. v. Ameristep, Inc.*, 302 F. Supp. 2d 991, 995 (W.D. Wis. 2004) (stating, in denying defendant's motion for a continuance to allow for additional discovery, that "[d]efendant fails to explain how [additional] information will help defeat plaintiffs' motion for summary judgment.").

### 3. Thermal Dynamics Has Provided Non-Infringement Arguments Where it Believes They Exist.

For the claims of the patents-in-suit that Plaintiffs are not moving on here, Thermal Dynamics did present factual non-infringement contentions. (*See* Ex. 12 at pp. 2-4 and App. A; Fact No. 11). While Plaintiffs obviously disagree with Thermal Dynamics' positions on such claims, Thermal Dynamics' actions demonstrate that it advanced non-infringement positions where it believed any non-frivolous position existed.

### 4. Thermal Dynamics Has Repeatedly Admitted That No Other Non-Infringement Arguments Exist.

ITW and Miller Electric have contacted Thermal Dynamics on multiple occasions to confirm that it has no non-infringement positions. (*See* Ex. 13 and 14). Thermal Dynamics has continued to maintain that it has provided all of the non-infringement positions that it has. (*See* Ex. 16).

Because Thermal Dynamics has all the evidence relating to infringement that it will ever need, the absence of any non-infringment arguments from Thermal Dynamics at this stage in the litigation conclusively resolves the issue of infringment for the claims at issue in this motion.

Thermal Dynamics has not presented any non-infringement contentions with respect to claims 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 21, 22, 23, and 24 of the '014 patent and claims 1, 4, 5, 7, 9, 16, and 20 of the '407 patent, even in light of this Court's mandate to do so. Therefore, there is no genuine dispute that Thermal Dynamics infringes these claims and summary judgment of infringement is proper.

> D. **The Uncontested Evidence Presented Here is Sufficient that no Reasonable Jury Could Find that the Thermal Dynamics' CutMaster™ 38 Does Not Infringe the Claims at Issue in this Motion.**

To prove infringement, a party must introduce sufficient evidence showing that the accused product or process meets every element of the claim. *See Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 842 (Fed. Cir. 1999). Summary judgment is appropriate where, as here, the defendant does not dispute the plaintiffs' proof as to the accused product or process. *See Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1322 (Fed. Cir. 2004).[5] The Federal Circuit made clear in the *Toro* case that when the defendant cannot even set forth any claim construction under which the accused product would not infringe, then the district court does not need to construe the claims before entering summary judgment of infringement. *Id.*

Indeed, the law is clear that a district court is only required to construe claims terms in dispute, and only to the extent necessary to resolve the dispute. *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding that district court only needs to construe the disputed claim terms for purposes of infringement).[6] Because there is no dispute

---

[5] Note that in the *Toro* opinion the Federal Circuit explicitly held that, because there were no factual disputes on the issue of infringement, summary judgment was proper without construing the claims. *Id.*

[6] *See also Vivid Techs., Inc., v. American Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (noting that only those claim terms in controversy need to be construed); *Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 288 F.Supp.2d 562, 584 (S.D. N.Y. 2003) ("The court should only construe disputed claim terms that are in controversy and only to the extent necessary to resolve the controversy."); *Macrovision Corp. v. Dwight Cavendish*
(Continued...)

whatsoever as to infringement, whatever the precise scope of the claims at issue, Thermal Dynamics cannot deny that the accused CutMaster™ 38 is within that scope.[7] Thermal Dynamics has admitted that it cannot identify under any interpretation a single claim element for the uncontested claims that it contends is absent from the CutMaster™ 38.

Thermal Dynamics can, of course, advance whatever claim construction theories it likes to support its invalidity theories. *See Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1322 (Fed. Cir. 2004) (holding that district court may grant summary judgment of infringement prior to claim construction and then conduct a Markman hearing for invalidity purposes). But, given its inability to specify a single basis for pleading non-infringement, Thermal Dynamics' proposed invalidity constructions will likewise cover the CutMaster™ 38.

Long before the Court ordered deadline for Thermal Dynamics providing its non-infringement contentions, Plaintiffs gave Thermal Dynamics detailed infringement contentions for each asserted claim of the patents-in-suit.[8] (*See* Ex. 18; Fact No. 16). As shown in the attached Exhibits, Plaintiffs based their infringement analysis upon publicly-available documents and an inspection of the CutMaster™ 38. Thermal Dynamics knew all along that Plaintiffs had relied upon such documents, and, if Plaintiffs had presented anything inaccurate, Thermal Dynamics obviously would have corrected Plaintiffs by now. Where analysis of the publicly available materials did not itself show infringement, Plaintiffs performed testing to confirm

---

*Dev., Ltd.,* 105 F.Supp.2d 1070, 1072 (N.D. Cal. 2000) (court need only construe disputed terms because claim construction is not an exercise in redundancy).

[7] Indeed, the Court already rejected this very argument from Thermal Dynamics in ordering Thermal Dynamics to provide its non-infringement contentions if it had any. (*See* Ex. 10, 11; Fact Nos.9,10).

[8] This Court has previously held that Plaintiffs' infringement contentions provided Thermal Dynamics sufficient information as to the nature of Plaintiffs' infringement proof. (Ex. 19).

-12-

infringement. Representative testing is set forth in Exhibit 20 and is verified in the Affidavit of Quinn Schartner, attached as Exhibit 21.

As set forth in Exhibit 20, the CutMaster™ 38 infringes claims 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 21, 22, 23, and 24 of the '014 patent and claims 1, 4, 5, 7, 9, 16, and 20 of the '407 patent. Thermal Dynamics has never denied any aspect of the factual bases underlying Plaintiffs infringement contentions and should not be heard to say otherwise now. (Ex. 12 at pp. 2-4, App. A; Fact Nos. 11, 18-57). Accordingly, if Plaintiffs presented such evidence to a jury without contradiction from Thermal Dynamics, there would be no reasonable conclusion for the jurors but to render a verdict of literal infringement. (Fact Nos. 18-57). Because there are no genuine issues of material fact regarding the claims-at-issue, the Court should grant partial summary judgment now so the parties can focus on the issues truly in dispute.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant summary judgment of infringement in favor of Plaintiffs with respect to claims 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 21, 23, and 24 of the '014 patent and claims 1, 4, 5, 7, 9, 16, and 20 of the '407 patent.